David H.S. Commins (CSBN 124205)
Kenneth C. Webster (CSBN 179058)
COMMINS & WEBSTER, P.C.
400 Montgomery Street, Suite 200
San Francisco, CA 94104
Tel (415) 391-6490
Fax (415) 391-6493
david@commins.com
ken@commins.com

Attorneys for Plaintiff
Shoreline Capital Management, Ltd.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| SHORELINE CAPITAL MANAGEMENT, LTD., a British Virgin Islands company limited by shares,<br><br>Plaintiff,<br><br>vs.<br><br>XIAOBING SUN, an individual, also known as DANIEL SUN,<br><br>Defendant. | CV 08 0121<br>No.<br><br>SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT<br><br>1. Breach of contract<br>2. Misappropriation of trade secrets<br>3. Conversion<br>4. Unfair competition<br>5. Intentional interference with prospective economic advantage<br>6. Interference with contract<br>7. Unjust enrichment<br>8. Breach of duty of loyalty<br>9. Violation of California Penal Code §496<br>10. Violation of California Penal Code §502<br><br>Jury Trial Demanded |

Plaintiff Shoreline Capital Management, Ltd. (Shoreline) brings the following Complaint for injunctive relief and damages against Defendant Xiaobing "Daniel" Sun for:

    (a)    Breach of non-disclosure and employment agreements Mr. Sun signed before and at the time of his employment with Shoreline;

- 1 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

(b)     Misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act, California Civil Code §3426, *et seq.*;

(c)     Conversion of Shoreline's records that Mr. Sun expressly agreed were Shoreline's and which Mr. Sun agreed to maintain as confidential and agreed not to provide to any other person;

(d)     Unfair competition in violation of California Business & Professions Code §17200, *et seq.* based on Mr. Sun's misappropriation and use of Shoreline's trade secret and confidential information;

(e)     Intentional interference with Shoreline's prospective economic advantage based on Mr. Sun's unlawful contacts with Shoreline's prospective investors and vendors;

(f)     Interference with contract based on Mr. Sun's unlawful contacts with Shoreline's existing investors and vendors as well as in the solicitation of its employees to leave Shoreline to join Mr. Sun's new competing enterprise;

(g)     Unjust enrichment based on benefits obtained by Mr. Sun in his new competing enterprise from the unlawful use of Shoreline's trade secret and confidential information;

(h)     Breach of duty of loyalty based on Mr. Sun's contacts with Shoreline's investors for the purpose of developing his new competing enterprise, even while still employed by Shoreline, as well as on his unlawful use of Shoreline's trade secret and confidential information;

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

(i)     Receiving and/or concealing stolen confidential information in violation of California Penal Code §496; and

(j)     Unlawfully accessing Shoreline's computer network or system in violation of California Penal Code §502.

## JURISDICTION

1.     This Court has jurisdiction under 28 U.S.C. §1332 (a), diversity of citizenship.  Shoreline is a British Virgin Islands company limited by shares with its principal place of business in Guangzhou, China that conducts business in China through its wholly owned subsidiary, Shoreline Capital Consulting (Shenzhen) Co., Ltd. (Shoreline (Shenzhen)).  Shoreline is a private investment firm that manages assets for institutional investors through investments in distressed assets in China.  All of its client investors are in the United States and some of its largest client investors are in San Francisco.

2.     Defendant Mr. Sun is a citizen of China though he is domiciled in this District and is lawfully admitted in the United States as a permanent resident.  He owns a home in Newark, California where his wife and children live full time, and from which he routinely conducts work.

3.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

4.     Venue is proper in this District because a substantial part of the events and omissions on which Shoreline's claims are based occurred here.  28 U.S.C. §1391(a)(2).

- 3 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

## FACTS

5.    Shoreline has a unique business model.  Its primary asset is a particular financial model (the Shoreline Pricing Model or Shoreline Debt Pricing Model) that took three and one-half years to develop, including many hundreds of hours by skilled and experienced financial people and hundreds of thousands of dollars.  It has used this single model to invest over 76 million dollars in loans with principal value of 1.5 billion dollars.  All of its deals are based on this financial model, which is articulated in the form of an Excel spreadsheet.

6.    Shoreline employs over 25 people who work mostly in China with its wholly owned subsidiary, Shoreline (Shenzhen), but two of whom work principally in Campbell, California.  Most of these employees have executed non-disclosure agreements (NDAs) and, as part of their employment agreements, have countersigned employment agreement letters.  In those letters they have agreed not to resign and, within a period of two years following their departure from Shoreline, compete with Shoreline in the non-performing loan or distressed real estate investment area in China.  And all of these employees have agreed to keep strictly confidential all corporate documents, files, business-secrets and know-how.  What is more, all of Shoreline's employees (including Mr. Sun) have received its Employment Handbook, which requires employees to avoid conduct that could harm the company and prohibits use of Shoreline's name except when doing business for Shoreline:

> Article 8: Employee Conduct: Employees should use professional
> judgment and avoid any conduct that violates or potentially harms
> the best interests of the Company.  Without prior approval,
> employees must only use the Company's name or their titles when
> doing business for the Company.

- 4 -

1    The Employment Handbook also requires employees to maintain the

2  confidentiality of Shoreline's proprietary and trade secret information:

3

4    Article 9: Confidentiality: Employees shall follow and implement

5    the Company's confidentiality rules at all times. All information

6    obtained by employees, including, but not limited to,

7    asset/portfolio information, debtor information, asset servicing

8    strategies, debt collection status, models and forms of any kind

9    used by the Company, investment return models, evaluation

10    models and all other related information cannot be revealed to

11    persons outside the team, including any other employees within the

12    Company that are not directly related to the cases in which the

13    information is used.

14

15    (The Employment Handbook is written in Mandarin; the relevant portions above

16  have been translated for purposes of this action.)

17

18    7.    Shoreline found Mr. Sun when he was a graduate student at the University

19  of Chicago and Benjamin Fanger, who is a principal of Shoreline, began to recruit him in this

20  District where Mr. Sun resided (Mr. Sun was attending weekend classes in Chicago). All

21  interviews and meetings between Mr. Sun and Shoreline during the recruiting process were

22  conducted in this District in Campbell, California. On or about January 26, 2007, while

23  Shoreline was recruiting Mr. Sun, it asked him to sign a standard NDA and he did so. The NDA

24  stated that Shoreline would provide valuable information to Mr. Sun:

25

26    [T]he Company has agreed to provide certain information to the

27    Interested Party concerning the opportunity, which information

28    includes certain confidential and proprietary information that is

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

1  valuable to the Company, and is the exclusive property of the

2  Company.

3

4  In exchange for receiving this valuable confidential and proprietary information,

5  Mr. Sun agreed all non-public information he received from Shoreline would be deemed

6  confidential:

7

8  All information, documents and other communications furnished

9  by the Company to the Interested Party ("Proprietary Information")

10  shall be deemed confidential.  Proprietary Information shall not

11  include any information which becomes generally available to the

12  public other than as a result of disclosure by the Interested Party in

13  breach of this Agreement, information already in the Interested

14  Party's possession or information from a source not known to be

15  bound by an Agreement.

16

17  And Mr. Sun agreed not to disclose any confidential information he received:

18

19  Unless otherwise agreed to in writing by the Company or as may

20  be required by law or legal process, neither the Interested Party nor

21  any of its affiliates or representatives will use, disclose or reveal

22  any Proprietary Information for any purpose other than in direct

23  connection with assessing the potential employment opportunity

24  with the Company.

25

26  8.    While Shoreline was recruiting Mr. Sun, but after he had signed the NDA,

27  it disclosed to him the details of its financial model.  This was consistent with Shoreline's normal

28  business practice; it has never knowingly shown the Shoreline Pricing Model to anyone who was

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

not first made aware that it constituted confidential and proprietary information that was not to be disclosed outside Shoreline.

9.    Following the recruiting process, Shoreline offered Mr. Sun a job as a Portfolio Manager in Training.  Its offer to him was memorialized in a March 1, 2007 letter.  That letter explained that Mr. Sun would be located in Shoreline's Guangzhou office with its subsidiary, Shoreline (Shenzhen).  It set forth the areas of business he would be expected to learn and master.  It specified that he would not resign to compete with Shoreline and that he would keep confidential the company's proprietary and trade secret information:

> You hereby also agree to not resign to compete or work for any
> competitor involved in non-performing loan[s] or distressed real
> estate investment[s] in China for a period of two years following
> your departure from Shoreline unless agreed to in writing by the
> company.  You also agree to keep strictly confidential all corporate
> documents, files, business secrets and know-how.

Mr. Sun countersigned this letter on or about March 5, 2007 and promptly delivered a copy of it to Benjamin Fanger, one of Shoreline's principals in Campbell, California.

10.    Shortly after Mr. Sun executed the employment agreement letter, he began working for Shoreline mostly in Guangzhou, China.  In reliance on the confidentiality and non-disclosure agreements Mr. Sun executed, Shoreline provided him access to Shoreline's business model and the financial model on which it was based, and introduced him to its most important investors in the United States as well as bankers and asset management companies in China from whom Shoreline acquires loan portfolios.  Shoreline also permitted Mr. Sun to become familiar with Shoreline's actual and prospective asset/portfolio deals and customers in China.

- 7 -

1        11.    Between March and August 2007, Mr. Sun worked for Shoreline. Then, in

2    August he purportedly left for vacation, though he never returned. Instead, he and another

3    Shoreline employee, Qiang Du, set up a new company in China called Asia Long Term

4    Investment, or Asia LTI, in Guangzhou, China, where Shoreline has its headquarters. Asia LTI

5    was designed to do precisely the same business as Shoreline in the distressed debt market,

6    precisely the same field in which Shoreline operates. (Mr. Du did not leave Shoreline until

7    September 2007, but began to work with Mr. Sun to set up Asia LTI before that time.)

8

9        12.    Operating as Asia LTI, a company that is not yet registered to do business

10    in China, Mr. Sun and Mr. Du contacted Shoreline's investors in this District and other locations

11    in the United States as well as bankers and asset managers in China who are among Shoreline's

12    most important contacts. They also attempted to recruit employees from Shoreline to come to

13    work for Asia LTI. And when they were establishing or already operating Asia LTI, Mr. Sun

14    kept Shoreline's laptop computer that held its confidential, proprietary and trade secret

15    information.

16

17        13.    Mr. Sun sent a PowerPoint presentation outlining his and Mr. Du's new

18    operation as Asia LTI to the Washington State Investment Board (the WSIB), an entity in the

19    Unites States that has committed 20 million dollars with Shoreline and is one of Shoreline's most

20    important customers. The PowerPoint presentation that Mr. Sun sent to the WSIB is dated

21    August 2007, showing that it was developed and used to contact Shoreline's customers even

22    while Messrs. Sun and Du were still Shoreline employees. That PowerPoint presentation shows

23    that the business model on which Asia LTI is based stems largely or entirely from Shoreline's

24    confidential and proprietary financial model and other trade secrets. It also includes a direct

25    reference to a confidential deal that Shoreline closed that bore the code name "#1233"; the

26    "Portfolio Pricing" process described in it is exactly the same as Shoreline's pricing process; it

27    includes a list of Shoreline's confidential and trade secret protected prospective asset/portfolio

28

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

1   investments in China; it identifies Messrs. Sun and Du as having been Portfolio Managers when
2   this was a title neither had obtained with Shoreline.

3

4          14.    By e-mail and other means, Mr. Sun has solicited other Shoreline investors
5   in the United States, including Asia Alternatives in San Francisco, a fund of funds that has
6   committed to invest 15 million dollars in Shoreline's presently open fund, as well as an
7   additional 10 million dollars from the California Public Employees' Retirement System
8   (CALPERS) and others.  It is one of Shoreline's most important investors.  Mr. Sun also sent
9   Asia Alternatives the same Power Point presentation, described above, that he sent to WSIB.

10

11         15.    Mr. Du has even arranged and conducted a meeting with Asia
12  Alternatives' employee in Beijing, China, Valerie Cooper.  Mr. Sun also attempted to meet with
13  Ms. Cooper.  Shoreline is informed and believes that Messrs. Sun and Du have contacted
14  numerous other investors that are connected to Shoreline.

15

16         16.    Mr. Sun has attempted to recruit to Asia LTI some of Shoreline's key
17  employees in China.  He has even tried to recruit Mr. Fanger to come to work at Asia LTI.  In the
18  course of trying to induce Mr. Fanger to come to work for Asia LTI, Mr. Sun sent Mr. Fanger an
19  Excel spreadsheet that purported to articulate Asia LTI's financial model.  It was identical to the
20  confidential and proprietary Shoreline Pricing Model, except that on the cover page Mr. Sun
21  deleted Shoreline's name and added Asia LTI.

22

23         17.    Shoreline is presently in the process of closing a fund.  As it heads for a
24  first closing in January 2008 and further closings in February and March 2008, Mr. Sun's and
25  Asia LTI's contacts with Shoreline's investors and dissemination of Shoreline's trade secrets and
26  confidential and proprietary information, as well as its solicitations of its investors based on
27  Shoreline's financial model are interfering with Shoreline's ability to complete this important
28  business.

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

1

## GROUNDS FOR INJUNCTIVE RELIEF

2

3          18.     As more fully set forth above, Mr. Sun has breached the provisions of his

4    NDA and employment agreement with Shoreline.  Because he has acted in clear and flagrant

5    disregard of his binding contractual obligations to Shoreline, Shoreline is likely to succeed on the

6    merits of its claims against him.  In addition, Mr. Sun has taken Shoreline's confidential and

7    proprietary trade secret information and used it to establish a direct competitor with Shoreline.

8    He has used the Shoreline Pricing Model in his efforts to attract Shoreline's investors, to woo the

9    bankers and asset management companies that are its vendors and to attempt to attract its key

10   employees.  By improperly keeping Shoreline's laptop computer, he has had unauthorized access

11   to Shoreline's confidential information, including the Shoreline Pricing Model and Shoreline's

12   prospective asset/portfolio investments.  Even after Mr. Fanger met with Mr. Sun and asked him

13   to stop using Shoreline's confidential and trade secret materials, Mr. Sun openly admitted his

14   intention to continue his use of the materials and to continue his solicitation of Shoreline's client

15   investors.

16

17          19.     Such conduct constitutes breaches of Mr. Sun's contract with Shoreline,

18   the misappropriation and conversion of its trade secrets, conversion, unfair competition,

19   intentional interference with its prospective economic advantage and interference with its

20   existing contracts, unjust enrichment, breach of the duty of loyalty that Mr. Sun owed to

21   Shoreline, and violations of the California Penal Code.  Shoreline is likely to succeed on each of

22   these claims.

23

24          20.     Unless Mr. Sun is preliminarily enjoined from the foregoing conduct,

25   Shoreline will be irreparably harmed by, among other things:

26

27

28

- 10 -

(a)    Theft by a competitor of its confidential and trade secret information, including particularly its financial model, the very core of its business operation;

(b)    The loss of confidentiality of its confidential and trade secret information, including its financial model and a list of prospective asset/portfolio deals;

(c)    The loss of Shoreline's express contractual right not to have Mr. Sun leave Shoreline and enter into competition with it in precisely the same field and geographic market;

(d)    The loss of an incalculable amount of future patronage from investors in the United States who, as a result of solicitations from Mr. Sun and Asia LTI, will elect to do business with that firm instead of with Shoreline;

(e)    The loss of an incalculable amount of future patronage from banks and asset management companies in China from whom Shoreline acquires its loan portfolios;

(f)    The loss of the full and fair opportunity to compete with Mr. Sun and Asia LTI, in view of Mr. Sun's and Asia LTI's solicitations of Shoreline's investors, bankers and asset management company contacts, all on the basis of the Shoreline Pricing Model;

(g)    Damage to the stability of Shoreline's offices and operations both in China and the United States, and a threatened future loss of personnel if it became apparent that Shoreline's NDAs and employment agreements, like those it entered into with Mr. Sun, will not be enforced; and

- 11 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

(h)    Risks to the security and integrity of Shoreline's computer system if Mr. Sun or anyone from Asia LTI gained further unauthorized access to it.

In view of these and other considerations, Shoreline has no adequate remedy at law.

21.    A balancing of the equities favors the issuance of an injunction in favor of Shoreline. The injunctive relief it seeks would do no more than require Mr. Sun to adhere to his agreements with Shoreline which he entered into when he was recruited by and when he began his employment with Shoreline. The commitments and promises he made in those agreements permitted him to have access to Shoreline's confidential and proprietary trade secret information, particularly its financial model; had he not executed those agreements, he would not have gained access to that information and material.

22.    Though Mr. Sun's prior career was not in investment management, Shoreline does not seek to keep Mr. Sun from working in the financial industry in the United States, China or anywhere else. It does, however, seek to prevent him from using its confidential and proprietary trade secret information as a basis upon which to develop his unregistered enterprise, Asia LTI, and from obtaining the patronage of Shoreline's customers and vendors in the same highly specialized financial area through the use of the Shoreline Pricing Model and other confidential and proprietary information that belongs to Shoreline.

23.    Mr. Sun has deliberately chosen to disregard his agreements with Shoreline as well as its policies as set forth in the relevant terms of its Employment Handbook, and to engage in other actionable conduct. He has misappropriated Shoreline's information and materials, he has arranged meetings with its customers on the pretext that he was still employed by Shoreline, he has solicited its employees in the United States and China, and he has obtained unauthorized access to Shoreline's computer system. Having hired Mr. Sun to work in the

- 12 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

specific field of investing in distressed debt in China, having trained Mr. Sun to work in that field, and having revealed to him the materials and information that enable that business – which Shoreline's principals spent considerable resources and years to develop - it would be unjust and inequitable for Mr. Sun to continue to benefit from his deliberate disregard of his contractual and legal obligations.

24.    In addition, permitting Mr. Sun to profit from his breach of the agreements he entered into with Shoreline would encourage other Shoreline employees, who have signed similar or identical agreements, to disregard the obligations set forth in those agreements with impunity. Such employees would have an incentive to use Shoreline's confidential and proprietary information to compete with Shoreline to its detriment and to their advantage.

## COUNT 1: BREACH OF CONTRACT

25.    Shoreline incorporates by this reference each and every allegation in paragraphs 1 through 24, above, as though set forth fully here.

26.    Mr. Sun has violated, and continues to violate, the NDA he signed in January 2007 and the employment agreement letter he countersigned in March 2007 in the manner described above.

27.    Shoreline has performed all of its obligations under the NDA and the employment agreement letter.

28.    As a direct and proximate result of Mr. Sun's breach of the NDA and employment agreement letter, Shoreline has suffered and will continue to suffer the irreparable harm described above. Shoreline is therefore entitled to temporary, preliminary and permanent injunctive relief.

- 13 -

29.    As a direct and proximate result of Mr. Sun's breach of the NDA and employment agreement letter, Shoreline has suffered and will continue to suffer damages in an amount that will be proved at trial.

Therefore, Shoreline demands relief as set forth below.

## COUNT 2: MISAPPROPRIATION OF TRADE SECRETS

30.    Shoreline incorporates by this reference each and every allegation in paragraphs 1 through 29, above, as though set forth fully here.

31.    In the course of its business operations and at great expense, Shoreline has developed its financial model and other confidential and proprietary information and materials. It derives economic value from having these matters remain unknown to the public or to others who could obtain economic benefit from their disclosure or use.

32.    Shoreline has made reasonable efforts to maintain the secrecy of its confidential information, including by entering into NDAs and employment agreements with its prospective employees, current employees, and others who might come into contact with such information, and by making clear as part of its employment manuals that such information is valuable and to be treated as confidential.  Shoreline has safeguarded its confidential materials and information from disclosure in public documents, or through other means that might cause it to be revealed to the public at large.

33.    Without authorization Mr. Sun has taken from Shoreline a copy of its financial model as well as other confidential information, including but not limited to a list of Shoreline's prospective investment opportunities, all of which he obtained as a result of his

- 14 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

1   employment with Shoreline. Mr. Sun took this information in documentary and computer-

2   accessible form, and has used this information to establish a competing enterprise, to contact and

3   solicit Shoreline's customers, vendors and employees as described above. Mr. Sun has engaged

4   in the unauthorized use of this information and these materials after acquiring them by improper

5   means, or, at the time of using them, he knew or had reason to know that they had been acquired

6   under circumstances giving rise to a duty to maintain them in secrecy or limit their use. Mr. Sun

7   presented these materials to Shoreline's client investors as if they were his own.

8

9         34.    Mr. Sun's conduct constitutes a misappropriation of trade secret in

10  violation of the California Uniform Trade Secret Act, California Civil Code §3426, *et seq.* and

11  California common law.

12

13        35.    As a direct and proximate result of Mr. Sun's actions, Shoreline has been

14  damaged, and Mr. Sun has been unjustly enriched, in an amount that will be proved at trial.

15  Shoreline is entitled to recover damages at trial, and to obtain temporary, preliminary and

16  injunctive relief pursuant to California Civil Code §§ 3426.2 and 3426.3.

17

18        36.    Because Mr. Sun's actions were willful and malicious, pursuant to

19  California Civil Code §3426.3 and other applicable law, Shoreline is entitled to recover

20  exemplary and punitive damages in an amount no less than double the damages done to it, in

21  order to punish Mr. Sun for his wrongful behavior and to deter others from engaging in similar

22  misconduct.

23

24        37.    If neither damages nor unjust enrichment caused by Mr. Sun's

25  misappropriation are provable, Shoreline is entitled to payment of a reasonable royalty.

26

27

28

- 15 -

1          38.    Shoreline alleges that because Mr. Sun's misappropriation was willful and

2    malicious, it is further entitled to recover its attorneys' fees in this matter under California Civil

3    Code §3426.4 and other applicable law.

4

5          Therefore, Shoreline demands relief as set forth below.

6

7                   COUNT 3: CONVERSION

8

9          39.    Shoreline incorporates by this reference each and every allegation in

10   paragraphs 1 through 38, above, as though set forth fully here.

11

12         40.    At all relevant times, Shoreline was, and still is, the owner of its

13   confidential information, particularly including the Shoreline Pricing Model and the list of its

14   prospective asset/portfolio investments, all of which is valuable and necessary for the conduct of

15   its business. This confidential information has also been valuable to Mr. Sun. The value of the

16   confidential information, indeed of the Shoreline Pricing Model alone, exceeds $75,000.

17

18         41.    At some time after he began working for Shoreline and before he

19   established Asia LTI, and without authorization, Mr. Sun intended to and did take Shoreline's

20   confidential information, including specifically a copy the Shoreline Pricing Model and a list of

21   Shoreline's prospective investment deals, and converted them for his own use outside of

22   Shoreline's business. Since then, he has derived great economic value from it.

23

24         42.    As a direct and proximate result of each conversion, Shoreline has suffered

25   damages in an amount or in amounts to be proved at trial. Mr. Sun has been unjustly enriched by

26   each conversion, also in an amount or in amounts to be proved at trial.

27

28

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

43.    Because Mr. Sun converted Shoreline's confidential information willfully and maliciously and with an intent to injure Shoreline and unlawfully obtain benefit for himself, Shoreline is entitled to punitive damages under California Civil Code §3294.

Therefore, Shoreline demands relief as set forth below.

## COUNT 4: UNFAIR COMPETITION

44.    Shoreline incorporates by this reference each and every allegation in paragraphs 1 through 43, above, as though set forth fully here.

45.    The conduct described above, including but not limited to the improper contact and solicitation of Shoreline's investors and customers, and the misappropriation and use of Shoreline's confidential information, particularly the Shoreline Pricing Model and a list of its prospective asset/portfolio investments, constitutes unfair competition under California Business & Professions Code §17200, *et seq.* Said conduct is continuing.

46.    As a direct and proximate result of Mr. Sun's unlawful business practices, Shoreline has suffered irreparable harm and will continue to suffer irreparable injury that cannot be adequately remedied at law. Therefore, Mr. Sun and all persons acting in concert with him or under his direction or control must be enjoined from engaging in further unlawful business practices.

47.    As a direct and proximate result of Mr. Sun's conduct as alleged above, he has been unjustly enriched. Shoreline is therefore entitled to restitution damages as disgorgement of any profits he received as a result of said conduct, which he holds in constructive trust for Shoreline's benefit. Shoreline is also entitled to an order enjoining Mr. Sun from using, disposing of, wasting or in any other respect dissipating any and all of the proceeds directly or

1  indirectly traceable to his misconduct and which he holds in constructive trust for Shoreline's

2  benefit.

3

4           Therefore, Shoreline demands relief as set forth below.

5

6  ## COUNT 5: INTENTIONAL INTERFERENCE WITH PROSPECTIVE

7  ## ECONOMIC ADVANTAGE

8

9         48.     Shoreline incorporates by this reference each and every allegation in

10  paragraphs 1 through 47, above, as though set forth fully here.

11

12         49.     Shoreline has longstanding and profitable business relationships with

13  customers whom Mr. Sun has solicited for his own economic advantage.  Because of the nature

14  of these relationships, Shoreline has had a reasonable expectation that these relationships would

15  continue to exist, with immediate and continuing benefit to Shoreline, including the likelihood

16  that past relationships would result in repeat business and referrals of new business.

17

18         50.     Mr. Sun has knowledge of and intentionally and wrongfully interfered

19  with and has disrupted the relationships described above, and Shoreline's consequent reasonable

20  expectations of immediate and continuing economic benefits, by engaging in the conduct alleged

21  above, including, but not limited to, the improper contact and solicitation of Shoreline's investors

22  and customers, and misappropriating, disclosing and using Shoreline's confidential information,

23  particularly the Shoreline Pricing Model and a list of its prospective asset/portfolio investments,

24  as a basis for a new enterprise that competes with Shoreline and for the business of Shoreline's

25  customers.

26

27         51.     Mr. Sun's conduct was not privileged.

28

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

52.    As a direct and proximate result of Mr. Sun's actions, Shoreline has been damaged in an amount to be proved at trial.

53.    As a direct and proximate result of Mr. Sun's conduct alleged above, Shoreline has suffered irreparable harm and will continue to suffer irreparable injury that cannot be adequately remedied at law unless Mr. Sun, and all persons acting in concert with him or under his direction or control, are enjoined from engaging in further similar misconduct.

54.    Mr. Sun's conduct as alleged above was willful and undertaken with malice and an intent to injure Shoreline and unlawfully benefit Mr. Sun. Shoreline is therefore entitled to punitive damages under California Civil Code §3294.

Therefore, Shoreline demands relief as set forth below.

COUNT 6: INTERFERENCE WITH CONTRACT

55.    Shoreline incorporates by this reference each and every allegation in paragraphs 1 through 54, above, as though set forth fully here.

56.    Shoreline has longstanding and profitable business relationships with customers whom Mr. Sun has solicited for his own economic advantage. In several cases where Shoreline has received commitments for investments in its currently open fund, or where it has already received investment monies for that fund, Mr. Sun has contacted those investors and attempted to cause them to invest through his new company, Asia LTI. These contacts have interfered with Shoreline's existing business contracts: each of these investors expressed to Shoreline concerns about the stability of Shoreline's team. Furthermore, Mr. Sun has interfered with Shoreline's contracts with its employees by soliciting numerous Shoreline employees to leave Shoreline and join Asia LTI.

- 19 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

57.     Mr. Sun has knowledge of and intentionally and wrongfully interfered with and has disrupted the relationships described above, and Shoreline's consequent reasonable expectations of immediate and continuing economic benefits, by engaging in the conduct alleged above, including, but not limited to, misappropriating, disclosing and using Shoreline's confidential information, particularly its financial model and a list of its prospective asset/portfolio investments, as a basis for a new enterprise that competes with Shoreline and for the business of Shoreline's customers.  Mr. Sun has also used that information to cause Shoreline's customers to ask questions about Shoreline's presently open fund.

58.     Mr. Sun's conduct was not privileged.

59.     As a direct and proximate result of Mr. Sun's actions, Shoreline has been damaged in an amount to be proved at trial.

60.     As a direct and proximate result of Mr. Sun's conduct alleged above, Shoreline has suffered irreparable harm and will continue to suffer irreparable injury that cannot be adequately remedied at law unless Mr. Sun and all persons acting in concert with him or under his direction or control, are enjoined from engaging in further similar misconduct.

61.     Mr. Sun's conduct as alleged above was willful and undertaken with malice and an intent to injure Shoreline and unlawfully benefit Mr. Sun.  Shoreline is therefore entitled to punitive damages under California Civil Code §3294.

Therefore, Shoreline demands relief as set forth below.

- 20 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

## COUNT 7: UNJUST ENRICHMENT

62.    Shoreline incorporates by this reference each and every allegation in paragraphs 1 through 61, above, as though set forth fully here.

63.    While employed at Shoreline, Mr. Sun had access to Shoreline's confidential information. He and Shoreline had entered into agreements that while Mr. Sun was employed by it, and afterwards, he would not misappropriate its confidential information. Mr. Sun breached his obligation to Shoreline and stole its confidential information for his own use and benefit.

64.    Mr. Sun has derived economic benefit from his wrongful acquisition of Shoreline's confidential information.

65.    As a direct and proximate result of Mr. Sun's conduct as alleged above, Mr. Sun has been unjustly enriched by having taken advantage of and having benefitted from the retention, knowledge and use of the confidential information. Shoreline is therefore entitled to restitution damages as disgorgement of any profits received by Mr. Sun as a result of his conduct, which he holds in constructive trust for Shoreline's benefit. Shoreline is also entitled to an order enjoining Mr. Sun from using, disposing of, wasting or in any other respect dissipating any and all of the proceeds directly or indirectly traceable to his misconduct and which he holds in constructive trust for Shoreline.

Therefore, Shoreline demands relief as set forth below.

- 21 -

1

## COUNT 8: BREACH OF DUTY OF LOYALTY

2

3          66.      Shoreline incorporates by this reference each and every allegation in

4    paragraphs 1 through 65, above, as though set forth fully here.

5

6          67.      At all times during his employment with Shoreline, Mr. Sun owed it a duty

7    of complete loyalty, was obligated to act solely and exclusively in its best interests, and was

8    prohibited from acting in a manner contrary to its legitimate business interests.  This duty was

9    expressly set forth in Shoreline's Employment Handbook, which Mr. Sun received and the

10   contents of which Mr. Sun was responsible to be familiar with.

11

12         68.      By misappropriating Shoreline's confidential information, and using that

13   information to establish Asia LTI and to contact and solicit Shoreline's customers, vendors and

14   employees, Mr. Sun breached his duty of loyalty to Shoreline.

15

16         69.      On information and belief, Mr. Sun made secret plans with others,

17   including Mr. Du, to deprive Shoreline of its confidential information as well as its customers,

18   vendors and employees, even while he was still an employee of Shoreline.  In so doing, he

19   breached his duty of loyalty to Shoreline.

20

21         70.      As a direct and proximate result of Mr. Sun's breach of his duties

22   as alleged above, Shoreline has suffered and will continue to suffer irreparable injury and

23   financial losses in amounts that will be proved at the time of trial.

24

25         Therefore, Shoreline demands relief as set forth below.

26

27

28

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

## COUNT 9: RECEIVING AND/OR CONCEALING STOLEN CONFIDENTIAL INFORMATION IN VIOLATION OF CALIFORNIA PENAL CODE §496

71.    Shoreline incorporates by this reference each and every allegation in paragraphs 1 through 70, above, as though set forth fully here.

72.    Shoreline is informed and believes that Mr. Sun may have received some of the confidential information he used to establish Asia LTI from Mr. Du or others formerly or presently affiliated with Shoreline.  Mr. Sun also improperly took, held, and copied computer files from Shoreline's laptop after he left Shoreline's employment.  In each case, Mr. Sun received such information knowing that it had been purloined from Shoreline.

73.    Notwithstanding his knowledge that the information had been stolen and purloined from Shoreline, Mr. Sun accepted the information, concealed it, and made advantageous use of it in violation of California Penal Code §496(a).

74.    As a direct and proximate result of Mr. Sun's knowing acceptance of stolen and purloined confidential information, and of his concealing of it, Shoreline has been damaged in an amount to be proved at trial.

75.    Pursuant to Penal Code §496(c), Shoreline is entitled to receive three times the amount of its actual damages as alleged above, together with costs of suit and reasonable attorneys' fees.

Therefore, Shoreline demands relief as set forth below.

- 23 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

1    COUNT 10: UNLAWFULLY USING SHORELINE'S COMPUTER NETWORK OR SYSTEM

2    IN VIOLATION OF CALIFORNIA PENAL CODE §502

3

4        76.    Shoreline incorporates by this reference each and every allegation in

5    paragraphs 1 through 75, above, as though set forth fully here.

6

7        77.    Mr. Sun knowingly, wilfully and without permission accessed Shoreline's

8    computer system, networks and databases, including but not limited to his unauthorized taking,

9    holding and copying of computer files from Shoreline's laptop computer after he left Shoreline's

10   employment, and in so doing obtained its confidential information, and he did so to control

11   Shoreline's property and data, in violation of California Penal Code §502 (c)(1).

12

13       78.    Mr. Sun also knowingly accessed and without permission stole, copied

14   and made use of Shoreline's confidential information from Shoreline's computer systems,

15   networks and databases, in violation of California Penal Code §502 (c)(2).

16

17       79.    Mr. Sun also knowingly and without permission accessed Shoreline's

18   computers, computer systems and computer materials, all in violation of California Penal Code

19   §502 (c)(7).

20

21       80.    As a direct and proximate result of Mr. Sun's conduct as alleged above,

22   Shoreline has been damaged in an amount to be proved at trial.

23

24       81.    In doing the things set forth above, and in violating California Penal Code

25   §502 (c), Mr. Sun was and is guilty of oppression and malice toward Shoreline as defined under

26   California Civil Code §3294, and, under Penal Code §502(e)(4), Shoreline is entitled to punitive

27   and exemplary damages against Mr. Sun as a means of punishing him and deterring others from

28   similar conduct in the future.

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

Therefore, Shoreline demands relief as set forth below.

## PRAYER

Shoreline prays for judgment as follows:

On The First Count For Breach of Contract:

1. For temporary, preliminary and permanent injunctive relief prohibiting Mr. Sun and any person or entity working in concert with him or under his control or direction from using or maintaining any of the confidential information he wrongfully obtained from Shoreline;

2. For monetary damages according to proof;

3. For pre-judgment and post-judgment interest;

4. For costs of suit; and

5. For such other and further relief as the Court deems just and proper.

On The Second Count For Misappropriation of Trade Secrets:

1. For temporary, preliminary and permanent injunctive relief prohibiting Mr. Sun and any person or entity working in concert with him or under his control or direction from using or maintaining any of the confidential information he misappropriated from Shoreline;

2. For restitution of any amount by which Mr. Sun was unjustly enriched;

3. For a reasonable royalty;

4. For attorneys' fees;

5. For pre-judgment and post-judgment interest;

6. For costs of suit; and

7. For such other and further relief as the Court deems just and proper.

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

On The Third Count For Conversion:

1.    For restitution of any amount by which Mr. Sun was unjustly enriched;

2.    For monetary damages according to proof;

3.    For pre-judgment and post-judgment interest;

4.    For punitive damages;

5.    For costs of suit; and

6.    For such other and further relief as the Court deems just and proper.

On The Fourth Count For Unfair Competition:

1.    For temporary, preliminary and permanent injunctive relief prohibiting Mr. Sun and any person or entity working in concert with him or under his control or direction from using or maintaining any of the confidential information he misappropriated from Shoreline;

2.    For restitution of any amount by which Mr. Sun was unjustly enriched;

3.    For pre-judgment and post-judgment interest;

4.    For costs of suit; and

5.    For such other and further relief as the Court deems just and proper.

On The Fifth Count For Interference With Prospective Economic Advantage:

1.    For temporary, preliminary and permanent injunctive relief prohibiting Mr. Sun and any person or entity working in concert with him or under his control or direction from using or maintaining any of the confidential information he misappropriated from Shoreline;

2.    For damages according to proof;

3.    For pre-judgment and post-judgment interest;

4.    For punitive damages;

5.    For costs of suit; and

6.    For such other and further relief as the Court deems just and proper.

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

On The Sixth Count For Interference With Contract:

1.    For temporary, preliminary and permanent injunctive relief prohibiting Mr. Sun and any person or entity working in concert with him or under his control or direction from using or maintaining any of the confidential information he misappropriated from Shoreline;

2.    For damages according to proof;

3.    For pre-judgment and post-judgment interest;

4.    For costs of suit; and

5.    For such other and further relief as the Court deems just and proper.

On The Seventh Count For Unjust Enrichment:

1.    For restitution damages as disgorgement of any profits received by Mr. Sun as a result of his conduct, which he holds in constructive trust for Shoreline's benefit;

2.    For an order enjoining Mr. Sun and any person or entity working in concert with him or under his control or direction from using, disposing of, wasting or in any other respect dissipating any and all of the proceeds directly or indirectly traceable to his misconduct and which he holds in constructive trust for Shoreline.

3.    For pre-judgment and post-judgment interest;

4.    For costs of suit; and

5.    For such other and further relief as the Court deems just and proper.

On The Eighth Count For Breach of Duty of Loyalty:

1.    For damages according to proof;

3.    For pre-judgment and post-judgment interest;

4.    For costs of suit; and

5.    For such other and further relief as the Court deems just and proper.

- 27 -

On The Ninth Count For Violating Penal Code §496:

1.    For treble damages according to proof;

2.    For attorneys' fees;

3.    For pre-judgment and post-judgment interest;

4.    For costs of suit; and

5.    For such other and further relief as the Court deems just and proper.

On The Tenth Count For Violation of Penal Code §502:

1.    For punitive damages;

2.    For pre-judgment and post-judgment interest;

3.    For costs of suit; and

4.    For such other and further relief as the Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Shoreline demands a trial by jury.

DATED:  January 8, 2008.                    COMMINS & WEBSTER
                                            Professional Corporation


                                            By: _David H.S. Commins_
                                            David H.S. Commins
                                            Attorneys for Plaintiff
                                            Shoreline Capital Management, Ltd.

- 28 -

SHORELINE CAPITAL MANAGEMENT, LTD.'S COMPLAINT

℀JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Shoreline Capital Management, Ltd.

**DEFENDANTS**

Xiaobing Sun, an individual, also known as Daniel Sun

**(b)** County of Residence of First Listed Plaintiff  **British Virgin Islands**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Alameda**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Commins & Webster, P.C. (415) 391-6490

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                                 and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332 (a)

Brief description of cause:
Misappropriation of trade secrets

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
01/08/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____