David H.S. Commins (CSBN 124205)
Kenneth C. Webster  (CSBN 179058)
COMMINS & WEBSTER, P.C.
400 Montgomery Street, Suite 200
San Francisco, CA 94104
Tel (415) 391-6490
Fax (415) 391-6493
david@commins.com
ken@commins.com

Attorneys for Plaintiff
Shoreline Capital Management, Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SHORELINE CAPITAL MANAGEMENT, LTD., a British Virgin Islands company limited by shares,

        Plaintiff,

    vs.

XIAOBING SUN, an individual, also known as DANIEL SUN,

        Defendant.

No.  JW CV 08 0121

DECLARATION OF BENJAMIN FANGER SUPPORTING *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION, AND FOR ORDER GRANTING LEAVE TO CONDUCT EXPEDITED DISCOVERY

I, Benjamin Fanger, say:

1.    I am a principal of Shoreline Capital Management, Ltd. (Shoreline), the Plaintiff in this action.  I have personal knowledge of the matters set forth in this Declaration and would competently testify to them if called as a witness.

- 1 -

DECLARATION OF BENJAMIN FANGER SUPPORTING *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION, AND FOR ORDER GRANTING LEAVE TO CONDUCT EXPEDITED DISCOVERY

2.      In February of 2004, my partner, Xiaolin Zhang, and I formed Shoreline while we were at the graduate school of the University of Chicago to engage in the unique and almost unprecedented business of representing foreign institutional investors in investments in Chinese distressed assets. In the years since that date, we have grown the company to over 25 employees and are viewed in the industry as a leading player almost entirely because of the team we have trained and the trade secrets we employ in our business.

3.      In the Fall of 2004, my partner, Xiaolin Zhang, and I used our personal capital to open an office in China and begin hiring employees that had legal and financial expertise in distressed Chinese assets. At the end of 2004, we began working with these employees to create a financial model with which to price distressed debt in China (the Shoreline Pricing Model). This model was repeatedly changed and improved over time as we, and dozens of our employees, used it to conduct analysis and pricing on tens of billions of dollars of loans (principle balance). Throughout the changes, the model maintained the same form as an Excel spreadsheet with thousands of fields for data to be inputted. The model was also adapted for different types of deals, ranging from highly secured portfolios such as our Shenzhen portfolio to highly unsecured portfolios such as our "#1233" portfolio. In all, the model was the basis for us investing over $76 million in over $1.5 billion principle worth of loans. The model has also been one of the primary selling points of our business as we have marketed our new $200 million fund over the last twelve months.

4.      Over the last four years, Shoreline has developed relationships with sellers of distressed assets in China. In particular, it has developed close relationships with each of the four state-owned asset management companies which are the only institutions permitted to sell distressed debt at a discount in China. Two of these, Huarong Asset Management Company (Huarong) and Cinda Asset Management Company (Cinda), are particularly inclined to work with Shoreline due to the fact that we have purchased multiple portfolios from each of them. As

- 2 -

DECLARATION OF BENJAMIN FANGER SUPPORTING *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION, AND FOR ORDER GRANTING LEAVE TO CONDUCT EXPEDITED DISCOVERY

1  part of our deal sourcing activities, we have set up a deal sourcing team that has created a list of

2  potential portfolios for investment (the "Potential Investment List").

3

4       5.    I and my partners have always considered our Shoreline Pricing

5  Model, our Potential Investment List and other company documents to be highly confidential

6  proprietary trade secrets. Because they are the primary tools in our business we have always

7  closely guarded them and have required confidentiality agreements to be signed by any person

8  that was shown the documents. We have also included strong confidentiality language in our

9  Employee Manual to give notice of such confidentiality to our employees. We have delivered

10  this Employment Manual to all employees as they begin work with our company or its

11  subsidiary, Shoreline Capital Consulting (Shenzhen) Co., Ltd. (Shoreline Shenzhen).

12

13       6.    In January of 2007, while I was in Campbell, California, I began recruiting

14  for the position of Portfolio Manager in Training with our company. I recruited from the

15  University of Chicago because my partner Xiaolin Zhang and I graduated from that business

16  school, and because I believed that fellow alumni would be intelligent, ethical and trustworthy.

17  While recruiting, a Chicago student who resided in Newark, California, Xiaobing "Daniel" Sun,

18  was very persistent in his attempt to be hired for the position. He called me and arranged several

19  interviews in and around Campbell, California.

20

21       7.    Because of the confidential nature of our business and in an effort to

22  protect our trade secrets, and prior to showing Mr. Sun any of our financial models, I required

23  Mr. Sun to sign a non-disclosure agreement (NDA), which he did in Campbell, California on

24  January 26, 2007. A true and correct copy of this agreement is attached hereto as Exhibit A. The

25  agreement shows Mr. Sun's residential address of the house that he owns and resides in as being

26  located in Newark, California, not far from Campbell, California.

27

28

DECLARATION OF BENJAMIN FANGER SUPPORTING *EX PARTE* APPLICATION FOR TRO
AND OSC RE PRELIMINARY INJUNCTION, AND FOR ORDER GRANTING LEAVE TO
CONDUCT EXPEDITED DISCOVERY

8.    I also required other applicants who progressed to multiple rounds of interviews to sign NDAs. One other such applicant was Qiang Du, who signed the NDA on March 13, 2007 and delivered it to me in Campbell, California.

9.    Following the recruitment process, I offered Mr. Sun a job as Portfolio Manager in Training on March 1, 2007 provided that he sign the Offer Letter for Portfolio Manager in Training which I drafted. He did sign it on March 5, 2007 and it is attached hereto as Exhibit B.

10.    Following the recruitment process, I offered Mr. Du a job as Portfolio Manager in Training on March 13, 2007 provided that he sign the Offer Letter for Portfolio Manager in Training. He did sign it on March 14, 2007 and it is attached hereto as Exhibit C.

11.    Both Offer Letters stipulate that if signed, they are to serve as employment agreements and they each also include confidentiality and non-compete provisions.

12.    I included non-compete provisions in the agreements because neither Mr. Sun nor Mr. Du had prior work experience in the fund management business and I wanted to avoid the possibility that we spend time and money providing them our proprietary know-how only to have them leave and compete.

13.    Between March and August of 2007, Mr. Sun worked for Shoreline. Upon his arrival at Shoreline, Mr. Sun was given an Employment Handbook in Chinese (which he speaks and reads). In the handbook were the terms attached hereto as Exhibit D (translated into English). The company lent to Mr. Sun a company-owned laptop onto which he copied many confidential and proprietary files in the course of his work at Shoreline.

- 4 -

DECLARATION OF BENJAMIN FANGER SUPPORTING *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION. AND FOR ORDER GRANTING LEAVE TO CONDUCT EXPEDITED DISCOVERY

14.    On or about May 24, 2007, Mr. Sun overheard me speaking with one of Shoreline's potential investors about it's new fund's Private Placement Memorandum (PPM), which is the principal marketing document through which private funds are raised by Shoreline. Shoreline's PPMs typically involve a great deal of cost to draft because they are lengthy documents including detailed marketing information and complex legal terms. Mr. Sun asked me multiple times if I would give him a copy of the fund's PPM, even though employees would have no use for such a document unless they intended to raise their own fund.

15.    Around the end of July 2007, Mr. Sun left for what he called vacation leave. On a Sunday in early August, I had lunch with Mr. Sun in Guangzhou, China. During the lunch Mr. Sun informed me that he was considering leaving the company. He asked me if I wanted to terminate him. I informed him that we did not want to terminate him and hoped he would stay, provided he come back from vacation leave and do his best to achieve the seven job requirements outlined in the Offer Letter. I also asked him what he would do if he did leave Shoreline and he stated he would probably do some kind of investment business work. I told him that if he did so, I would be happy to source capital for his deals as long as they were not within the distressed asset market in which he had agreed not to compete. I told him that, either way, I wished to remain friends. Mr. Sun left and did not return to work.

16.    From the around the end of July 2007 to the end of September 18 2007, Mr. Sun kept Shoreline's laptop in his possession outside of Shoreline's offices, despite our requests for him to return it. The laptop contained Shoreline's confidential and proprietary information.

17.    On August 27, 2007, I received an e-mail, attached as Exhibit E, from my partner Xiaoling Zhang, in which she stated that our senior asset manager, Yonghui Wu, told her that Mr. Sun solicited Mr. Wu to join him.

- 5 -

DECLARATION OF BENJAMIN FANGER SUPPORTING *EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION, AND FOR ORDER GRANTING LEAVE TO CONDUCT EXPEDITED DISCOVERY

1    18.    On November 11, 2007, 17. Mr. Sun e-mailed a Power Point presentation

2    to Valerie Cooper of Asia Alternatives, a fund-of-funds based in San Francisco, California that

3    has committed $25 million to our new fund, $15 million from its own fund-of-funds and $10

4    million from CALPERS, California's largest pension fund.  In December of 2007, Asia

5    Alternatives' co-founder in San Francisco, Melissa Ma, contacted me to request a meeting to

6    discuss disturbing information she possessed related to our former employees.  On January 7,

7    2007, Ms. Cooper forwarded the November 11th e-mail to me, which is a solicitation of Asia

8    Alternatives as a client.  Mr. Sun first met Valerie Cooper in a meeting that I set up as part of

9    Shoreline's fundraising process.  The forwarded e-mail is attached as Exhibit F and includes a

10    Power Point presentation in substantially the same form as the one discussed below.

11

12

13    19.    Together with Qiang Du, who had left Shoreline to work with Mr. Sun as

14    a co-founder of Asia LTI, Mr. Sun solicited a meeting with Ms. Cooper in Beijing, which Ms.

15    Cooper accepted.  She met with Qiang Du as a result of that solicitation.

16

17    20.    On November 29, 2007, Mr. Sun e-mailed a Power Point presentation to

18    Tripp Gantt of the Washington State Investment Board (the WSIB) who has committed $20

19    million to our new fund and is one of our anchor investors.  On December 11, 2007, Mr. Gantt

20    forwarded the e-mail to me.  Mr. Sun first met Mr. Gantt in our offices in Guangzhou in a

21    meeting that I set up as part of Shoreline's fundraising process.  The forwarded e-mail is attached

22    as Exhibit G.

23

24    21.    The Power Point presentation included in the November 29 e-mail is dated

25    August 2007, a month in which Mr. Sun was still an employee at Shoreline.  The Power Point

26    presentation markets Mr. Sun's new business, Asia Long Term Investment (Asia LTI) and does

27

28

- 6 -

DECLARATION OF BENJAMIN FANGER SUPPORTING *EX PARTE* APPLICATION FOR TRO
AND OSC RE PRELIMINARY INJUNCTION, AND FOR ORDER GRANTING LEAVE TO
CONDUCT EXPEDITED DISCOVERY

so by outlining substantial amounts of Shoreline's proprietary and confidential know-how and also information on debt pricing that is based on Shoreline's Debt Pricing Model.

22.    The August Power Point presentation has false statements about Mr. Sun's employment at Shoreline and also includes a list of deals on the last page that are deals from Shoreline's Potential Investment List and which were sourced by Shoreline before Mr. Sun joined the firm. The list from the Power Point's last page is attached as Exhibit H.

23.    On December 5, 2007, I met with Mr. Sun to attempt to dissuade him from continuing to disseminate our confidential proprietary information, and to convince him to adhere to the terms of his NDA and employment letter. On that day, he informed me directly that he was competing in non-performing loans and distressed real estate in China, the exact areas that he expressly agreed not to compete in when he signed the employment offer letter on March 5, 2007. He claimed that he should be allowed to compete since he felt like he was essentially terminated by Shoreline. But he admitted that we never told him he was terminated and his e-mail to Mr. Gantt on November 29 confirms that he left of his own volition: "Since I don't feel it's culture is a good fit for me working at Shoreline, I left before being transformed into a formal employee, then I started a firm with a local lawyer."

24.    In our meeting on December 5, 2007, Mr. Sun did not agree to cease his actions. Instead, he tried to convince me to join him in his new competing venture.

25.    Because I expressed doubt about Mr. Sun's ability to analyze and price distressed assets, that night Mr. Sun e-mailed me a financial model that was labeled "Asia LTI" on the cover sheet. The financial model was exactly the same as the edition of the Shoreline Debt Pricing Model that Mr. Sun obtained during his employment with Shoreline. The only difference was that he had deleted Shoreline's name off the cover sheet and in its place entered

- 7 -

1    difference was that he had deleted Shoreline's name off the cover sheet and in its place entered
2    the name of his new company, Asia LTI.  To protect the confidential status of Shoreline's Debt
3    Pricing Model, any copies of it will be filed under seal in the event the Court wishes to review it.
4
5            26.    Also because I expressed doubts about his ability to analyze and price
6    assets, in the meeting on December 5, 2007, Mr. Sun showed me  financial models on his
7    personal laptop that he stated he had used to price several portfolios for a Chinese investor.  He
8    stated he had been paid for this service by the Chinese investor.  Later, after reading the
9    declaration of our employee Deguang Zheng in this case, I realized that one portfolio he was
10   referring to was the same Huarong portfolio that was prepared in August with our models.  In the
11   course of opening Excel files on his laptop, Mr. Sun admitted to me that he used these files to do
12   analysis on new distressed portfolios.  I viewed the details of the Excel files for upwards of ten
13   minutes and saw that they contained the same pricing techniques used in our pricing of portfolio
14   "#1233," which Mr. Sun was involved with servicing while he was at Shoreline.
15
16           27.    On January 6, 2008, I called Valerie Cooper at Asia Alternatives to
17   confirm that she had been solicited by Mr. Sun.
18
19           28.    On January 8, 2008, I met with Mr. Sun to ask him one last time whether
20   he intended to stop his improper competition and use of Shoreline's confidential information.  He
21   indicated no such intention.
22
23           I declare under penalty of perjury under the laws of the United States that the
24   foregoing is true and correct.
25           Executed this 10th day of January, 2008 at  Guangzhou, China.
26
27
28
                                                 Benjamin Fanger
                                        - 8 -

DECLARATION OF BENJAMIN FANGER SUPPORTING *EX PARTE* APPLICATION FOR TRO
AND OSC RE PRELIMINARY INJUNCTION, AND FOR ORDER GRANTING LEAVE TO
CONDUCT EXPEDITED DISCOVERY

**EXHIBIT A**

**January 26, 2007**

TO:     **Dan Sun**
          **5795 Bellflower Drive**
          **Newark, CA USA**

RE:     **CONFIDENTIALITY OF BUSINESS OPPORTUNITY**


**Dear Mr. Sun,**

This agreement ("Agreement") is by and among Dan Sun (the "Interested Party") and Shoreline Capital Management, Ltd. (the "Company") in connection with the request by the Interested Party to receive information related to the Interested Party's potential participation as an employee or otherwise in the Company. In order to facilitate discussions concerning any such participation, the Company has agreed to provide certain information to the Interested Party concerning the opportunity, which information includes certain confidential and proprietary information that is valuable to the Company, and is the exclusive property of the Company. In consideration for disclosure of information regarding the Company, the Interested Party agrees as follows:

All information, documents or other communications furnished by the Company to the Interested Party ("Proprietary Information") shall be deemed confidential. Proprietary Information shall not include any information which becomes generally available to the public other than as a result of disclosure by the Interested Party in breach of this Agreement, information already in the Interested Party's possession or information from a source not known to be bound by an Agreement.

Unless otherwise agreed to in writing by the Company or as may be required by law or legal process, neither the Interested Party nor any of its affiliates or representatives will use, disclose or reveal any Proprietary Information for any purpose other than in direct connection with assessing the potential employment opportunity with the Company.

Please sign the original and one copy in the space indicated below and return them to the Company whereupon the Company will execute this Agreement and return one of the fully executed duplicate originals to the Interested Party.


Very truly yours,

Benjamin Fanger
Managing Director
Shoreline Capital Management, Ltd.

                              **ACCEPTED AND AGREED TO**

_____ (signature)
Dan Sun

Date: 1/26/07

**EXHIBIT B**



**Shoreline Capital**

Huapu Office Complex #2501 East
13 Huaming Rd., Pearl River New City
Guangzhou, China 510623
Phone (PRC): (8620) 2238-2688
Phone (US): (1) 408-377-3668
Fax (PRC): (8620) 2238-2505
Fax (US): (1) 408-377-6127

March 1, 2007

**RE: Offer Letter for Portfolio Manager in Training**

**TO: Xiaobing Daniel Sun**

Dear Daniel,

We are very excited to offer you a position as "Portfolio Manager in Training" at Shoreline Capital Management, Ltd. As we work to drive forward the growth of the corporation at this vital stage, we hope your presence in our team will develop into a long and beneficial relationship.

If you accept the offer, we anticipate your start date will be on March 26th 2007. You will be located in our Guangzhou office with our Chinese subsidiary, Shoreline Capital Consulting (Shenzhen) Co., Ltd. Because you will be on track to become a Portfolio Manager once you are trained, we expect you to master the following areas of our business:

1) Sourcing of new non-performing loan and distressed real estate deals across China.
2) In-depth due diligence, analysis and valuation of new loan and real estate deals. Mastery of this area includes a full understanding of legal documentation, relevant financial valuation methods, techniques for finding assets or other relevant information, and Excel analysis sheets currently used by Shoreline.
3) Negotiations with potential sellers; understanding of deal closing and approval processes.
4) Recruiting and managing teams in new markets for new portfolios.
5) Creation and implementation of asset servicing strategies; must be demonstrated through successful profitable exits from assets you are given to manage.
6) Management of servicing team members to successfully reach target returns.
7) Demonstration of good communication, cooperation and leadership within the company culture and with the company's client investors, lawyers, asset sellers/buyers and other parties involved in our business.

For the first three months of your employment, you will be in a trial period during which we will assess your capabilities and contribution to the team and pay you a trial-period salary of RMB 10,000 per month. If during the three months you prove that you are a valuable contributor to the team, we will then negotiate with you an agreement for full time employment with RMB 20,000 per month base salary. Also, commission will be based on our Employee Handbook which involves an additional 50% of your annual base salary for meeting targets and profit sharing after that for exceeding targets. We have every expectation that you will prove your value and remain with the company long term.

At the end of 12 months, we will review your contributions to determine whether to promote you to "Portfolio Manager" and "Junior Partner" from your current position of "Portfolio Manager in Training." If you are promoted, we will provide you with some form of vesting equity participation in the company or deals, based on your contribution to the team. We will also review your base salary for a potential raise.

If you signify your acceptance of the above terms by signing below, this document will serve as an agreement outlining the terms of your employment. You hereby also agree to not resign to compete or

1 of 2

work for any competitor involved in non-performing loan or distressed real estate investment in China for a period of two years following your departure from Shoreline unless agreed to in writing by the company. You also agree to keep strictly confidential all corporate documents, files, business secrets and know-how.   If you breach the above non-compete and/or confidentiality agreement with the company, we will use every legal measure available to obtain relevant damages from you and also ensure that our clients, competitors and associated companies are aware of the breach.

Again, we thank you for considering the position and we hope you will join us.

Sincerely,

Benjamin Ranger
Managing Director
Shoreline Capital Management, Ltd.

Signed and accepted by:

Xiaobing Daniel Sun

Date:  3 / 5 / 2007

**EXHIBIT C**

**Shoreline Capital**

Huapu Office Complex #2501 East
13 Huaming Rd., Pearl River New City
Guangzhou, China 510623
Phone (PRC): (8620) 2238-2688
Phone (US): (1) 408-377-3668
Fax (PRC): (8620) 2238-2505
Fax (US): (1) 408-377-6127

March 1, 2007

RE: Offer Letter for Portfolio Manager in Training

TO: Qiang Du

Dear Qiang,

We are very excited to offer you a position as "Portfolio Manager in Training" at Shoreline Capital Management, Ltd. As we work to drive forward the growth of the corporation at this vital stage, we hope your presence in our team will develop into a long and beneficial relationship.

If you accept the offer, we anticipate your start date will be as soon as possible, no later than July 2007. You will be located in our Guangzhou office with our Chinese subsidiary, Shoreline Capital Consulting (Shenzhen) Co., Ltd. Because you will be on track to become a Portfolio Manager once you are trained, we expect you to master the following areas of our business:

1) Sourcing of new non-performing loan and distressed real estate deals across China.
2) In-depth due diligence, analysis and valuation of new loan and real estate deals. Mastery of this area includes a full understanding of legal documentation, relevant financial valuation methods, techniques for finding assets or other relevant information, and Excel analysis sheets currently used by Shoreline.
3) Negotiations with potential sellers; understanding of deal closing and approval processes.
4) Recruiting and managing teams in new markets for new portfolios.
5) Creation and implementation of asset servicing strategies; must be demonstrated through successful profitable exits from assets you are given to manage.
6) Management of servicing team members to successfully reach target returns.
7) Demonstration of good communication, cooperation and leadership within the company culture and with the company's client investors, lawyers, asset sellers/buyers and other parties involved in our business.

For the first three months of your employment, you will be in a trial period during which we will assess your capabilities and contribution to the team and pay you a trial-period salary of RMB 10,000 per month. If during the three months you prove that you are a valuable contributor to the team, we will then negotiate with you an agreement for full time employment with RMB 20,000 per month base salary. Also, commission will be based on our Employee Handbook which involves an additional 50% of your annual base salary for meeting targets and profit sharing after that for exceeding targets. We have every expectation that you will prove your value and remain with the company long term.

At the end of 12 months, we will review your contributions to determine whether to promote you to "Portfolio Manager" (i.e. Junior Partner) from your current position of "Portfolio Manager in Training." If you are promoted, we will provide you with some form of vesting equity participation in the company or deals, based on your contribution to the team. We will also review your base salary for a potential raise.

If you signify your acceptance of the above terms by signing below, this document will serve as an agreement outlining the terms of your employment. You hereby also agree to not compete or work

directly in the non-performing loan or distressed real estate investment markets in China for a period of two years following your departure from Shoreline unless agreed to in writing by the company. You also agree to keep strictly confidential all corporate documents, files, business secrets and know-how. If you breach the above non-compete and/or confidentiality agreement with the company, we will use every legal measure available to obtain relevant damages from you and also ensure that our clients, competitors and associated companies are aware of the breach.

Again, we thank you for considering the position and we hope you will join us.

Sincerely,

Benjamin Fanger
Managing Director
Shoreline Capital Management, Ltd.

Signed and accepted by:

Qiang Du

Date:    03/14/2007

**EXHIBIT D**

**Selected Sections from Shoreline Capital's Employment Handbook**

Article 8: Employee Conduct:
Employees should use professional judgment and avoid any conduct that violates or potentially harms the best interests of the Company. Without prior approval, employees must only use the Company's name or their titles when doing business for the Company. Employment for the Company is full time. In order to avoid conflict of interests, when employees take any part time job at other organizations, prior approval of a general manager is required.

Article 9: Confidentiality:
Employees shall follow and implement the Company's confidentiality rules at all times. All information obtained by employees, including, but not limited to, asset/portfolio information, debtor information, asset servicing strategies, debt collection status, models and forms of any kind used by the Company, investment return models, evaluation models and all other related information cannot be revealed to person outside the team, including any other employee within the Company that is not directly related to the cases in which the information is used.

**EXHIBIT E**

**From:** xiaolin [mailto:xiaolin@shoreline-capital.com]
**Sent:** Monday, August 27, 2007 12:11 AM
**To:** 'Benjamin Fanger'
**Subject:** About Daniel 2


I this afternoon talked with Yonghui who told me that before Daniel left the company, Daniel
tried once to convince Yonghui go with him. Yonghui asked me not to ask Daniel about this as in
this case, he and Daniel may not be friends any more.

Xiaolin Zhang

**EXHIBIT F**

**David Commins**

| | |
|---|---|
| From: | Benjamin Fanger [bwfanger@shoreline-capital.com] |
| Sent: | Monday, January 07, 2008 2:29 PM |
| To: | 'David Commins'; 'Ken Webster' |
| Subject: | FW: [LIKELY_SPAM]Message from Daniel |

Attachments:      Asia LTI Introduction.ppt; _AVG certification_.txt

Asia LTI
troduction.ppt (153

_AVG
tification_.txt (272

-----Original Message-----
From: Valerie Cooper [mailto:vcooper@asiaalt.com]
Sent: Sunday, January 06, 2008 6:01 PM
To: bwfanger@shoreline-capital.com
Subject: FW: [LIKELY_SPAM]Message from Daniel

FYI: More to follow...

Valerie Cooper
Director & Head of Beijing Office
Asia Alternatives Advisor Hong Kong Limited, Beijing Representative Office Office P5, 3F/L, North Tower, Beijing
Kerry Center No. 1 Guang Hua Road, Chao Yang District Beijing 100020 P.R. China Office 86-10-8529-8890 Fax
86-10-8529-8895 Cell 86-1391-121-5094 Vonage (U.S.) 650-331-7227 Email vcooper@asiaalt.com

-----Original Message-----
From: Xiaobing Daniel Sun [mailto:xsun1@chicagogsb.edu]
Sent: Sunday, November 11, 2007 10:38 PM
To: Valerie Cooper
Subject: [LIKELY_SPAM]Message from Daniel

Dear Valerie:

  How have you been? This is Daniel Sun, who worked at Shoreline Capital.
We met at the Westin hotel of Beijing during this June.
Remember? For some reason, I left Shoreline in July, before I would
transfer to a formal employee at Shoreline.

  After leaving Shoreline I have been working very hard in sourcing deals of distressed asset and establishing team and
connections. I am now very confident to identify profitable deals and set up local
disposal team.

  If you have a chance, I'd like to have a cup of tea with you at Beijing on either Friday(16th) afternoon or next
Monday(19th) morning.
I am looking forward to hearing from you.


Kind Regards,

Xiaobing Daniel Sun
(86)134-5020-6410

1

**EXHIBIT G**

**David Commins**

| | |
|---|---|
| **From:** | Benjamin Fanger [bwfanger@shoreline-capital.com] |
| **Sent:** | Friday, January 04, 2008 4:07 PM |
| **To:** | 'David Commins'; 'Ken Webster' |
| **Cc:** | isabelle@shoreline-capital.com |
| **Subject:** | FW: Greeting from Daniel Sun |
| | |
| **Attachments:** | Asia LTI Introduction.ppt; _AVG certification_.txt |

Asia LTI                    _AVG
troduction.ppt (235  tification_.txt (273 f

-----Original Message-----
From: Gantt, Tripp (SIB) [mailto:Tgantt@sib.wa.gov]
Sent: Tuesday, December 11, 2007 11:35 AM
To: bwfanger@shoreline-capital.com
Subject: FW: Greeting from Daniel Sun

FYI. Not sure if you'd seen this, but thought I'd forward it, anyway.
Interesting, huh?

TG


-----Original Message-----
From: Xiaobing Daniel Sun [mailto:xsun1@chicagogsb.edu]
Sent: Thursday, November 29, 2007 10:55 AM
To: Gantt, Tripp (SIB)
Subject: Greeting from Daniel Sun

Dear Tripp:

 How's going? Wish everything goes well with you. I am not sure whether you still remember me. I worked at Shoreline Capital before July and you came to visit us for fund raising issue at Guangzhou. Since I don't feel its culture is a good fit for me working at Shoreline, I left before being transformed into formal employee, then I started a firm with a local lawyer.

 Our business is about distressed debt and real estate market. This is a huge market in China and I think that we barely have conflict with Shoreline. Attached please find an introduction of our firm and the market.
This is a document that I drafted in August. Since then, we found many potential deals sourcing information were not available for public, especially for those well collateralized single asset. we are working on real estate dea ls with debt and equity swap.


 I am now in SF Bay Area working on fund rising. Our current goal is to rise a fund at a size between 35mm USD to 60mm USD so that we can source couple of distressed debt portfolios with real estate collaterals and a distressed real estate deal.

The basic terms are:

 Investment Objective: 25% p.a. over a 3-5 year time period

Philosophy:  buy assets from sellers under timing/liquidation pressure

Investment Guidelines:   1. Duration < 2 years;  2. Fundamental research, local knowledge, Information Verification, Pricing and Clear path to exit.  3. diversified risk in terms of geography, industry and portfolio

Investment Strategy:  Asset under Special Situations.

Terms:  1. Mgmt fee: 1.5% - 1.8%  2. Performance Fee: certain percentage w/ high water mark 3. minimum investment : USD 1,000,000;  4. lock-in: 2 years w/ monthly valuation....


Please let me know whether you are interested.   I'd appreciate any suggestion.

Best Regards,


Xiaobing Daniel Sun
US #: 510-791-2196, 510-331-0237
China #: (86)134-5020-6410

**EXHIBIT H**



# Potential Deals under Evaluation*

- HuaRong AMC RMB 130mm OPB Portfolio due in September, 2007
- Communication Bank, construct GuangDong portfolio by selecting assets due in September 2007
- Orient AMC, construct ZhuHai portfolio by selecting assets due in September 2007
- YueCai RMB 15 bln OPB loss category due in October 2007
- HuaRong AMC 1232 FoShan 1.4 bln OPB due in Nov, 2007
- GreatWall AMC Headquarter, ABS deal structure and pricing

* We have finished DD on several portfolios or sub-portfolios.