David H.S. Commins (CSBN 124205)
Kenneth C. Webster (CSBN 179058)
COMMINS & WEBSTER, P.C.
400 Montgomery Street, Suite 200
San Francisco, CA 94104
Tel (415) 391-6490
Fax (415) 391-6493
david@commins.com
ken@commins.com

Attorneys for Plaintiff
Shoreline Capital Management, Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SHORELINE CAPITAL MANAGEMENT, LTD., a British Virgin Islands company limited by shares,,

Plaintiff,

vs.

XIAOBING SUN, an individual, also known as DANIEL SUN,

Defendant.

/

No. JW CV 08 0121

SHORELINE CAPITAL MANAGEMENT, LTD.'S MEMORANDUM RE SUBJECT MATTER JURISDICTION

TABLE OF CONTENTS

I INTRODUCTION . . . . . . . . . . 1

II FACTUAL BACKGROUND . . . . . . . . . . 2

A. Mr. Sun Goes To Work For Shoreline In March 2007 . . . . . . . . . . 2

B. Mr. Sun Returns To California In June 2007 And Tells Mr. Fanger It Is To Maintain His Permanent Resident Status In The United States . . . . . . . . . . 3

C. Mr. Sun Now Claims That Since August 2007 He Has Intended To Remain In China Indefinitely . . . . . . . . . . 3

D. Mr. Sun Files No AR-11 Forms With U.S. CIS Showing A Change In Residence . . . . . . . . . . 4

E. Mr. Sun Returns To The U.S. In November And Becomes A U.S. Citizen . . . . . . . . . . 4

F. While Mr. Sun Is Still In The United States, Shoreline Sues Him . . . . . . . . . . 5

G. Mr. Sun Flies From California To China With One Of His Sons On January 21, 2007, After This Suit Is Filed . . . . . . . . . . 5

H. Mr. Sun's Wife And Son Still Reside In California In The *Home Mr. Sun Still Owns* . . . . . . . . . . *5*

III LEGAL ANALYSIS . . . . . . . . . . 6

A. The Question Before The Court Is Where Was Mr. Sun Domiciled When Suit Was Filed On January 8, 2008? . . . . . . . . . . 6

B. Mr. Sun Was A California Domiciliary From January 2007 To November 20, 2007 . . . . . . . . . . 6

C. Mr. Sun Could Not Have Changed His Domicile From California To China Until He Arrived In China After His January 21, 2008 Departure From California . . . . . . . . . . 7

D. All Of The Indicia Of Domicile Point To California On January 8, 2008 . . . . . . . . . . 8

1. Mr. Sun's Current Residence Was By Law In California . . . . . . . . . . 8

2. There Is No Dispute That Mr. Sun Was Physically Present In California; He Was Served Here The Day The Complaint Was Filed . . . . . . . . . . 8

3. Mr. Sun Owns The Residence In Newark; He Has Made No Effort To Sell It . . . . . 9

4. Mr. Sun's Wife And Children Resided In California On January 8, 2008 . . . . . 9

5. Mr. Sun Never Filed Any AR-11 Forms Showing Change Of Residence . . . . . 9

6. Mr. Sun Still Owned And Was The Agent Of Service For S-Logic On January 8 . . . . . 10

E. The Court Should Examine Mr. Sun's Motives For Asserting A Change In Domicile . . . . . 10

IV CONCLUSION . . . . . 11

# TABLE OF AUTHORITIES

CASES

*Heinz v. Havelock*, 757 F. Supp. 1076 (C.D. Cal. 1991) . . . . . . . . . . . . 6, 7, 10

*Kantor v. Wellesley Galleries, Ltd.*, 704 F. 2d 1088 (9th Cir. 1983) . . . . . . . . . . . . 6

*LeBlanc v. Cleveland*, 248 F. 3d 95 (2nd Cir. 2001) . . . . . . . . . . . . 6

*Lew v. Moss*, 797 F. 2d 747 (9th Cir. 1986) . . . . . . . . . . . . 6, 7, 8

*Lundquist v. Precision Valley Aviation, Inc.*, 946 F. 2nd 8 (1st Cir. 1991) . . . . . . . . . . . . 6

*Williamson v. Osenton*, 232 U.S. 619 (1914) . . . . . . . . . . . . 10

STATUTES

8 C.F.R. § 265.1 . . . . . . . . . . . . 4

8 U.S.C. § 1305 (b) . . . . . . . . . . . . 4

8 U.S.C. § 1427 (b) . . . . . . . . . . . . 1, 4, 6

28 U.S.C. § 1332 (a) . . . . . . . . . . . . 6

California Corporations Code § 1502 (b) . . . . . . . . . . . . 2, 10

I

INTRODUCTION

Mr. Sun wants the Court to believe that he was a "citizen" of China for diversity purposes when Shoreline sued him on January 8, 2008. But the facts prove he was domiciled in California on January 8, 2008. Under 8 U.S.C. § 1427 (b), Mr. Sun had to be a U.S. resident continuously from January 2007, when he applied for citizenship, until the date he became a citizen on November 20, 2007. It was therefore impossible for him to establish domicile in China before November 20, 2007. That he spent time in China in mid 2007 assisting his ailing mother is laudable but irrelevant to whether he established domicile there. Indeed, he returned to California in the summer of 2007 to maintain his U.S. residency requirement as a prerequisite to becoming a U.S. citizen, and in the autumn of 2007 to become a U.S. citizen.

And because one cannot change domicile without first establishing a physical presence in the new jurisdiction, after he became a citizen in late November 2007, Mr. Sun could not have changed his domicile until he flew back to China again on January 21, 2008, after this suit was filed.

What is more, a traditional analysis of all the factors surrounding his domicile at the time suit was filed shows that he had not established a new domicile in China at the time of filing.

Mr. Sun was domiciled in California on the day suit was filed. Shoreline, on the other hand, has filed evidence with the Court establishing that it is not domiciled in California but is a British Virgin Islands company with headquarters in China.

Accordingly, diversity between the parties exists and Mr. Sun's challenge to subject matter jurisdiction must be denied.

II

FACTUAL BACKGROUND

A. Mr. Sun Goes To Work For Shoreline In March 2007

It appears that Mr. Sun started in the MBA program at the University of Chicago in 2005, and that he quit that program in March 2007 when he joined Shoreline. (Declaration of Di Wu, ¶¶ 3 and 11; Declaration of Xiaobing Sun In Support of Opposition to Motion for Preliminary Injunction and Subject Matter Jurisdiction (Sun SMJ Decl.).) While Mr. Sun attended school in Chicago, his wife and children lived in their California home. (Wu Decl., ¶ 4.)

In fact, while he attended graduate school in Chicago, Mr. Sun resided in their Newark, California home with his wife and children and traveled to Illinois to attend the University of Chicago's weekend program. (Accompanying Declaration of Benjamin Fanger Supporting Shoreline Capital Management, Ltd.'s Memorandum Re Subject Matter Jurisdiction (Fanger Decl. re SMJ), ¶ 2.) Indeed, he has operated a California corporation called S-Logic since 2002. (Id., ¶ 3.)

Contrary to Mr. Sun's Declaration (Sun SMJ Del., ¶ 26 and Exhibit C), it does not appear that S-Logic has been dissolved. The California Secretary of State still shows that company, which was registered in January 2002, to be "active," shows its address to be Mr. Sun's residence address in Newark, California, and shows him to be the agent for service of process. (Fanger Decl. re SMJ, ¶ 3 and Exhibit A.) The only requirement for a natural person to be an agent for service of process is that he or she be a resident of this state. California Corporations Code § 1502 (b). Although Mr. Sun appears to have signed dissolution papers for S-Logic on December 31, 2007, there is no evidence that he ever filed them, let alone that he filed them before this suit was filed.

Before Mr. Sun went to work for Shoreline, on January 26, 2007, he signed a non-disclosure agreement with Shoreline bearing residential address of the home he owns in Newark, California. (Declaration of Benjamin Fanger Supporting *Ex Parte* Application for TRO and OSC re Preliminary Injunction, ¶¶ 6 and 7 and Exhibit A.)

B. Mr. Sun Returns To California In June 2007 And Tells Mr. Fanger It Is To Maintain His Permanent Resident Status In The United States

Also in January 2007, Mr. Sun applied for U.S. Citizenship. (Sun SMJ Decl., ¶ 20.) Presumably, he applied for citizenship using his Newark, California address; his Certificate of Naturalization shows that he applied for citizenship in San Francisco. (Sun SMJ Decl., Exhibit B.)

Mr. Sun was a Lawful Permanent Resident (LPR) in the United States under 8 U.S.C. § 1255 when he joined Shoreline (Fanger Decl. re SMJ, ¶ 4), a status he must also have enjoyed when he applied for U.S. citizenship in January 2007.

In June 2007, he returned to the United States for his citizenship interview. (Sun SMJ Decl., ¶ 21.) When Shoreline asked about his trip, he explained that it was to maintain his permanent resident status in the United States. (Fanger Decl. re SMJ, ¶ 5.)

C. Mr. Sun Now Claims That Since August 2007 He Has Intended To Remain In China Indefinitely

Mr. Sun now asserts that in August 2007, not long after his citizenship interview, he decided to terminate his LPR status in the United States. He claims he then intended to remain in China indefinitely. He also claims he still intends to remain in China indefinitely. (Sun SMJ Decl., ¶ 19.)

D. Mr. Sun Files No AR-11 Forms With U.S. CIS Showing A Change In Residence

Although Mr. Sun purportedly changed his residence to China in March, decided in August that he intended to stay indefinitely, and changed the addresses of his "abodes" in China several times in the interim (Sun SMJ Decl., ¶ 19.), he never filed an AR-11, Alien's Change of Address Card with the U.S. CIS.[1] The collection of the information on such forms is required by 8 U.S.C. § 1305 and 8 C.F.R. § 265.1. All aliens are required to report a change of address and the new address within 10 days of such change.

Apparently, Mr. Sun did not really believe he had changed his residence address.

E. Mr. Sun Returns To The U.S. In November And Becomes A U.S. Citizen

By November 19, 2007, Mr. Sun was back in the United States. (Wu Decl., ¶ 15.) And he became a United States citizen the next day, November 20, 2007. (Sun SMJ Decl., ¶¶ 22-23 and Exhibit B.) Because he was required by 8 U.S.C. § 1427 (b) to have "resided continuously within the United States from the date of the application up to the time of admission to citizenship," he must have been a resident in the Northern District the entire time from his January application through November 20, 2007. (Mr. Sun has not asserted that he resided in any other district in the United States.) In other words, he could not have changed his residence to China before November 20, 2007 and then legitimately have obtained U.S. citizenship. Conversely, if true, his convenient current assertion that he changed his domicile to China in August would mean that his citizenship was improvidently obtained.

[1] The Court's January 25, 2008 Order Granting in Part Plaintiff's Motion For a Preliminary Injunction required Mr. Sun to produce relevant information with respect to his citizenship and domicile. At the hearing on Plaintiff's Motion on the same date, the Court indicated that any AR-11 forms Mr. Sun had filed in 2007 would be included under this rubric. On Monday, January 28, 2008, Mr. Sun produced three Declarations and several attached exhibits but no AR-11 forms. On Tuesday, January 29, 2008, Shoreline's attorneys asked counsel for Mr. Sun if Mr. Sun had filed any but to date they have received no response. (Commins Decl. Supporting Shoreline's Memo. re SMJ, ¶¶ 2-4.) It therefore appears that Mr. Sun never filed any such forms.

F. While Mr. Sun Is Still In The United States, Shoreline Sues Him

While he was still in the United States, on January 8, 2008, Shoreline filed its Complaint and hand-served it on Mr. Sun. (Shoreline's Complaint and Proofs of Personal Service are on file with the Court.)

The day the Complaint was filed and served, Mr. Fanger, one of Shoreline's principals, met with Mr. Sun. Mr. Sun said then that his wife was an LPR in the United States and was in the process of applying for citizenship. (Fanger Decl. re SMJ, ¶ 6.)

G. Mr. Sun Flies From California To China With One Of His Sons On January 21, 2007, After This Suit Is Filed

On January 21, 2008, almost two weeks after this suit was filed, Mr. Sun flew to China with one of his sons. (Sun SMJ Decl., ¶ 30.) He left his other son and his wife here in California, presumably at the residence in they ownNewark.[2]

H. Mr. Sun's Wife And Son Still Reside In California In The Home Mr. Sun Still Owns

Mr. Sun's spouse says she "plans[s] to spend time in China with the children." (Declaration of Di Wu, ¶ 18.) She does not say that "she is planning to move back to China in the next few weeks with [the] older son to live with [Mr. Sun]," as Mr. Sun declares. (Sun SMJ Decl., ¶ 34.) When Mr. Sun started working for Shoreline, he told it that he owned his home in Newark, California where his wife and one of his two children remain. (Fanger Decl. re SMJ, ¶ 7.) He still owns that home today. (Fanger Decl. re SMJ, ¶ 8 and Exhibit B.)

---

[2] Mr. Sun claims he has no return ticket to the United States, but his e-mail confirmation from the airline (Sun SMJ Decl., Exhibit E) shows an open return ticket. In other words, it appears Mr. Sun has a ticket to return to the U.S. at any time he pleases.

III

LEGAL ANALYSIS

A. The Question Before The Court Is Where Was Mr. Sun Domiciled When Suit Was Filed On January 8, 2008?

Aliens lawfully admitted into the U.S. for permanent residence are treated the same as citizens for diversity purposes. "Such an alien is deemed to be a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332 (a).

For purposes of diversity of citizenship, a person is a "citizen" of the state in which he or she is domiciled at the time the lawsuit is filed. *Kantor v. Wellesley Galleries, Ltd.*, 704 F. 2d 1088, 1090, 1090 (9th Cir. 1983); see also *LeBlanc v. Cleveland*, 248 F. 3d 95, 100 (2nd Cir. 2001) and *Lundquist v. Precision Valley Aviation, Inc.*, 946 F. 2nd 8, 10 (1st Cir. 1991) (diversity not defeated by change of domicile after filing).

"[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Lew v. Moss*, 797 F. 2d 747, 749 (9th Cir. 1986); *Heinz v. Havelock*, 757 F. Supp. 1076, 1079 (C.D. Cal. 1991).

So, the question is where did Mr. Sun really have a living place in which he intended to stay or to which he intended to return on January 8, 2008?

B. Mr. Sun Was A California Domiciliary From January 2007 To November 20, 2007

Mr. Sun could not have been anything but a California resident between January and November 20, 2007. 8 U.S.C. § 1427 (b). Otherwise, the granting of his citizenship was

improper. Mr. Sun's present allegation that he resolved in August 2007 to reside permanently in China is simply not credible – or even possible – because of his uninterrupted permanent California residency through November 20, 2007.

Mr. Sun goes to great length to show that since April 2007 he has spent much of his time in China tending to his ailing mother. (Sun SMJ Decl., ¶¶ 6-19 and Exhibit A.) And Shoreline does not dispute that her unfortunate circumstances required his attention or that he properly gave it. But Mr. Sun's account of what he told his interviewer at his June 2007 citizenship hearing in the U.S. – that he was taking care of his mother in China following her surgery and that he had to return to her as soon as possible (*Id.*, ¶ 21) – particularly combined with his failure to file a single AR-11 form, is consistent with a temporary stay in China and permanent residence and domicile in the U.S.[3]

C. <u>Mr. Sun Could Not Have Changed His Domicile From California To China Until He Arrived In China After His January 21, 2008 Departure From California</u>

Mr. Sun could not have changed his domicile from California to China until <u>after</u> suit was filed because "[a] person's old domicile is not lost until a new domicile is acquired." *Heinz v. Havelock*, 757 F. Supp. at 1079. A change in domicile requires: "(a) physical presence at the new location with (b) an intention to remain there indefinitely." *Lew v. Moss*, 797 F. 2d at 750. Because after he became a U.S. Citizen on November 20, 2007 Mr. Sun was not again physically present in China until two weeks after this suit was filed, he could not have established a new domicile there until then.[4]

---

[3] Exhibit A to Mr. Sun's Declaration, purportedly a copy of a Chinese doctor's memo, is hearsay; and because it is almost entirely in Chinese, it is unintelligible.

[4] Mr. Sun apparently left California on January 21, 2008 but probably did not arrive in China until January 22, 2008, the earliest date on which he could have completed his change of domicile.

D. All Of The Indicia Of Domicile Point To California On January 8, 2008

Mr. Sun may assert that he "resided" in the United States but was somehow "domiciled" in China until he became a citizen. Shoreline does not believe this is possible, but even a traditional analysis of Mr. Sun's domicile at the time suit was filed leads to the conclusion that Mr. Sun was domiciled in California on the date the suit was filed. A determination of domicile involves a number of factors, some of which can be applied here and some of which cannot. *Lew v. Moss*, 797 F. 2d at 750.[5]

1. Mr. Sun's Current Residence Was By Law In California

One factor is current residence at the time of the filing of the Complaint. Mr. Sun cannot dispute that his residence was in California on January 8, 2008.

2. There Is No Dispute That Mr. Sun Was Physically Present In California; He Was Served Here The Day The Complaint Was Filed

Another factor is physical presence at the time of suit. Mr. Sun does not dispute that he was in California from November 19, 2007, at the latest, until January 21, 2008. Indeed, he was served in San Jose, California on the day the suit was filed.

---

[5] It does not make sense, for example, to discuss Mr. Sun's voting registration or voting practices because he only became a citizen on November 20, 2007 and no elections have taken place since then. In other cases, no evidence is presently available; Shoreline does not know whether Mr. Sun has a valid California driver's license. But an examination of similar indicia of residency leads to the conclusion that he was domiciled in California when Shoreline sued him.

3. Mr. Sun Owns The Residence In Newark; He Has Made No Effort To Sell It

When Mr. Sun started working for Shoreline, he told it that he owned his home in Newark, California where he resided at the time of the filing of the suit and where his wife and one of his two children remain today. He still owns that home today. While there is some evidence that Mr. Sun has made efforts to sell some of his belongings, there is no evidence that he or Mrs. Sun have tried to sell the house.

4. Mr. Sun's Wife And Children Resided In California On January 8, 2008

Mr. Sun's wife and both of his children were living in Newark on January 8, 2008. Indeed, it appears that his wife and at least one of his children still live in the Newark home.

What is more, Mrs. Sun's Declaration suggests that she and the boy who currently resides with her plan to spend time in China but do not intend to move there permanently.[6]

5. Mr. Sun Never Filed Any AR-11 Forms Showing Change Of Residence

The fact that Mr. Sun failed to file any AR-11 forms also shows that he never truly viewed his residence to be in China. Instead, it appears that he believed his time in China was temporary. This is consistent with his mother's regrettable illness. It is also consistent with the short period of time he worked for Shoreline. (Admittedly, his employment with Asia LTI casts a slightly different light on this issue, but Mr. Sun was accustomed from his years

---

[6] If Mrs. Sun had taken the position that she intended to move to China and to remain there indefinitely, it would conflict with her prospects of becoming a United States citizen. Since, on the day of filing, Mr. Sun said that his wife still intended to become a U.S. citizen, it appears that she did not then and does not now intend to do anything more than "spend time in China with the children."

commuting between Chicago and California to having his family in one place and his job in another. What is more, since Asia LTI has approached Shoreline's investors in California, he presumably contemplated being present in California for business purposes on a regular basis.)

6. Mr. Sun Still Owned And Was The Agent Of Service For S-Logic On January 8

Mr. Sun still owns S-Logic, and that corporation was still active on the date the Complaint was filed. He was then – and still is – its agent for service of process, which means he believed he was a resident of California. (For a natural person to serve as the agent for service of process for a California corporation, the agent must be a resident of this state. California Corporations Code § 1502 (b).) His attempts to show that the corporation has been dissolved do not withstand scrutiny. He has failed to show a filed Certificate of Dissolution and the Secretary of State's information continues to show that the corporation is active.

E. The Court Should Examine Mr. Sun's Motives For Asserting A Change In Domicile

Not long ago, Mr. Sun was a Chinese citizen domiciled in California. Now he is a brand new U.S. citizen who claims to be domiciled in China. Why the switch?

The motive for a change of domicile is immaterial to the determination of the existence of diversity of citizenship, provided, however, that the motive is *bona fide*. See *Williamson v. Osenton*, 232 U.S. 619, 625 (1914). But the Court "may consider evidence of motive in evaluating the honesty of defendant['s] asserted intention to establish a new domicile." *Id.*; *Heinz v. Havelock*, 757 F. Supp. at 1079. Mr. Sun contends – perhaps too conveniently – that he flew to California for his citizenship interview in June, returned to China, and then only in August decided that he would remain there indefinitely. The fact that he came back to the United States in November to become a citizen having never filed an AR-11 form makes his professed change of intention with respect to his residence less than credible.

No one can question a person's desire to be with an ailing parent and Shoreline does not do so here. But Mr. Sun's desire to be with his mother in China does not mean that he permanently abandoned the home he owns, his wife and children, his business, and the country of which he just became a citizen.

IV

CONCLUSION

Mr. Sun cannot have it both ways. He cannot accept citizenship in this country based on continuous residence here from the date of his application through the date he was awarded citizenship and simultaneously assert that he decided to stay in China indefinitely before November 20, 2007. He should be estopped from doing so.

The clear weight of the evidence before the Court establishes that Mr. Sun did not reside and was not domiciled in China on January 8, 2008, the date this action was filed. Instead, the facts show that until at least November 20, 2007, Mr. Sun considered California, where his wife and child and corporation were all domiciled (and are still domiciled), to be his own domicile. And he did not have an opportunity to complete a change of domicile from California to China until two weeks after this suit was filed. The Court should therefore conclude that Mr. Sun was a citizen of California at the time he was served, while Shoreline was a citizen of the British Virgin Islands at the same time, and that diversity of citizenship has been established.

DATED: January 31, 2008.

COMMINS & WEBSTER
Professional Corporation

By: /David H.S. Commins/
David H.S. Commins
Attorneys for Plaintiff
Shoreline Capital Management, Ltd.